[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 513.]

THE STATE EX REL. THE PLAIN DEALER ET AL. *v.* OHIO DEPT. OF INSURANCE
ET AL.

[Cite as *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 1997-Ohio-75.]

*Public records—Mandamus compelling Ohio Department of Insurance to disclose*
*withheld documents concerning purchase of Blue Cross/Blue Shield of Ohio*
*by Columbia/HCA Health Care Corporation—Limited writ granted, when.*

(No. 96-2247—Submitted May 20, 1997—Decided December 5, 1997).

IN MANDAMUS.

_____

{¶ 1} R.C. 3901.321 requires the Ohio Department of Insurance ("Department") to conduct a review of any proposed transaction by which a domestic insurer is purchased by a company not domiciled in Ohio. Pursuant to the statute, the Department may request documents from both companies to ascertain their respective financial conditions. Additionally, the Department must conduct a public hearing under R.C. 3901.321 (F)(1) as part of the review process prior to approving any merger or other acquisition of control of a domestic insurer. There are no provisions in this statute for confidentiality of documents submitted as part of this process. Documents obtained during the review are made available to the public to allow policyholders of the company being purchased the opportunity to challenge transactions that could adversely affect their policies.

{¶ 2} Under another section of the Ohio Revised Code, R.C. 3901.07, the Department is empowered to conduct an "examination," at least triennially, of all insurance companies authorized to do business in Ohio. These examinations monitor the economic health of Ohio insurers, as well as identify potential problems, in order that the Department can work with insurers to correct them. The requirement for a triennial examination has no relation to the review procedure

required by R.C. 3901.321. Written requests for documents and documents submitted by the insurers in accordance with this process are known as "work papers" and are protected from public disclosure under R.C. 3901.48.

{¶ 3} In March 1996, Blue Cross/Blue Shield of Ohio ("Blue Cross") announced a sale of a large portion of its assets to Columbia/HCA Health Care Corporation ("Columbia"), a Tennessee corporation. On April 10, 1996, representatives of Blue Cross and officials of the Department met to discuss the pending transaction. During that meeting, Blue Cross and Department officials discussed the potential public availability of documents that might be submitted to the Department, pursuant to the Public Records Act of Ohio, R.C. 149.43. At least one Department official indicated at that meeting that public disclosure of documents was a strong possibility, and that "[t]he Department should disclose as many documents as possible to the public * * * including, initially, the disclosure memoranda."

{¶ 4} On May 9, 1996, pursuant to administrative regulations of the Department and R.C. 3901.321, Integrated Health Corporation ("Integrated"), a wholly owned subsidiary of Columbia, filed a Form A with the Department. The Form A is filed as part of the review process under R.C. 3901.321 by which the Department determines whether to approve the transaction. It is a statement by the acquiring insurer containing information relating to the acquisition of the domestic insurer. It contains information about the acquiring insurer, including its name, background, information about individuals associated with the insurer, and the insurer's future plans with regard to the acquisition. Form A also discusses the method of acquisition, including the voting securities to be acquired as part of the transaction and their ownership.

{¶ 5} Integrated's filing also included a copy of the principal purchase agreement between Columbia and Blue Cross. Many of the terms of the principal agreement are conditioned upon compliance with, limited by, or defined by

2

reference to the Disclosure Memoranda ("Memoranda") of Columbia and Blue Cross. The Memoranda, which are documents containing financial, organizational, regulatory, contractual, and other information of both companies, were not filed as part of the Form A. Department officials concede that any review of the proposed sale could not be completed without the Memoranda.

{¶ 6} During this process, the Department determined that the size and complexity of this transaction warranted an examination of Blue Cross under R.C. 3901.07. Although Blue Cross was not scheduled for an examination until later in the year, the Department considered the results of an examination to be a key factor in conducting the review of the proposed purchase of Blue Cross by Columbia. Accordingly, personnel from the Department, separate from those conducting the review pursuant to R.C. 3901.321, began an examination pursuant to R.C. 3901.07. This unusual simultaneous review and examination process came to be known as the "dual-track." As documents from Blue Cross arrived at the Department, Department officials would determine the "track" on which each document could best be used. This process resulted in documents being classified by the track on which they were directed rather than the process for which they were originally requested.

{¶ 7} While conducting an investigation of this transaction, a reporter for the relator, The Plain Dealer, informed the Department that the Memoranda were not in the Form A file. The Department then sent three letters to Blue Cross between June 27, 1996 and August 22, 1996, requesting information to supplement the Form A filing. The first letter, dated June 27, 1996, requested that various information, including the Disclosure Memorandum of Blue Cross, be submitted to supplement the Form A filing. This letter discussed the public nature of any documents submitted and stated that Blue Cross could possibly obtain confidentiality for any documents submitted by requesting confidentiality and providing a legal basis therefor. Blue Cross was further directed to submit redacted

and unredacted copies of each document for which confidential treatment was requested. The letter expressly reserved to the Department the right to determine the confidentiality of any document submitted by stating, "Each request for confidential treatment will be evaluated and a determination will be made as to whether any is excepted from public disclosure separately. If any document or part of a document is found not to meet an exception it will be made part of the Department's public files and handled accordingly."

{¶ 8} The second letter, dated July 1, 1996, requested further information regarding the Form A filing. This letter requested minutes of board of trustees' meetings, documents relating to the noncompetition agreements filed as part of the proposed transaction, and other items related to the transaction. This letter did not indicate whether the material submitted pursuant to its request would be considered by the Department as confidential.

{¶ 9} The final letter, dated August 22, 1996, discussed the responses of Blue Cross to the first two letters. The letter first commented that the Department had not yet received copies of the Memoranda in complete form, indicating that the submission by Blue Cross of indexes of the Memoranda in a response dated August 12, 1996 was inadequate. For the first time in any of the letters, the Department indicated that the Memoranda would be treated as confidential work papers under R.C. 3901.48, pursuant to the examination of Blue Cross under R.C. 3901.07. The Department made this determination even though the Memoranda were originally requested because they were needed to complete the Form A filing as part of the review process under R.C. 3901.321, for which there are no statutory provisions authorizing the Department to grant confidential status to documents filed pursuant to a review. In making this decision, the Department deviated from its practice of receiving the requested documents and then determining their confidential status, as stated in its June 27, 1996 letter and as subsequently followed in its response to

Blue Cross on July 23, 1996 that certain documents received on July 15, 1996 would not be granted confidential status pursuant to R.C. 3901.48.

{¶ 10} Despite the practice of the Department to treat *all* correspondence related to any ongoing examination under R.C. 3901.07 as confidential work papers pursuant to R.C. 3901.48, and therefore never to make *any* of that correspondence public, the Department placed the August 22, 1996 letter, along with all previous letters, in the public file consistent with its treatment of correspondence relating to a review under R.C. 3901.321.

{¶ 11} The second part of the August 22, 1996 letter discussed the previous responses of Blue Cross to the earlier two letters. This portion of the letter discussed claims by Blue Cross that its responses were confidential because the material contained within those responses constituted trade secrets. The Department has no formalized regulations for determining the legitimacy of a trade secret claim. Rather, its stated practice is to allow insurers to claim that documents contain trade secrets, and at least one Department official indicated that the Department generally accepted an insurer's claim of trade secret status.

{¶ 12} In this part of the August 22, 1996 letter, the Department did not accept the claims of trade secret protection as to the letters of Blue Cross dated July 15, July 19, July 30, and July 31, 1996. However, the Department did state that it would accord trade secret status, pursuant to R.C. 1333.51, to the attachments to the letters of Blue Cross dated July 30 and July 31, 1996 and for the entire response of Blue Cross dated August 12, 1996. The Department therefore kept those documents confidential. The attachments to the July 30 letter contained correspondence regarding the principal agreement, correspondence about and drafts of consulting and noncompetition agreements to be executed with various Blue Cross officials, pro forma balance sheets of Blue Cross, and income statements of Blue Cross. Attached to the July 31 letter were additional drafts of the consulting and noncompetition agreements, biographical information on board

members, and an audit report. The August 12, 1996 response of Blue Cross enclosed indexes for the Memoranda.

{¶ 13} Blue Cross finally submitted the Memoranda as an attachment to a letter sent to the Department on August 28, 1996. Two days later, the Department decided that any documents, including the Memoranda, submitted concerning the Blue Cross transaction would be considered confidential work papers under R.C. 3901.48 pursuant to the examination under R.C. 3901.07. Relying upon R.C. 3901.48 and confidentiality of trade secrets pursuant to R.C. 1333.51, the Department refused to disclose copies of the attachments to the letters of Blue Cross dated July 30, 1996 and July 31, 1996, the response of Blue Cross dated August 12, 1996 and its attached indexes to the Memoranda, the letter dated August 28, 1996 and the attached Memoranda, a letter dated September 5, 1996 from the Department to Blue Cross, and a letter dated September 20, 1996 from Blue Cross to the Department.

{¶ 14} The cause is now before us pursuant to an original action in mandamus brought by the relators, *The Plain Dealer* and *Mark Tatge*, to compel disclosure of the withheld documents.

_____

*Spater, Gittes, Schulte & Kolman, Frederick M. Gittes* and *Kathaleen B. Schulte,* for relators.

*Betty D. Montgomery,* Attorney General; *Isaac, Brant, Ledman & Teetor, Mark Landes* and *Michael R. Szolosi, Sr.,* Special Counsel, for respondents Ohio Department of Insurance and Harold T. Duryee, Superintendent/Director of Ohio Department of Insurance.

*Porter, Wright, Morris & Arthur, Richard M. Markus, William J. Kelly, Jr.*, *Kathleen M. Trafford* and *Constance M. Greaney; Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.*, *John R. Climaco* and *Douglas A. Andrews*, for intervening respondent Blue Cross & Blue Shield Mutual of Ohio.

*Cathy J. Levine*, *Julio Mateo, Jr*. and *Kathy Collins*, in support of relators for *amici curiae*, Consumers Union and Community Catalyst.

*Ellen Dollase Wilcox*, in support of respondents for *amicus curiae*, National Association of Insurance Commissioners.

*Draper, Hollenbaugh & Briscoe Co., L.P.A*., *H. Ritchey Hollenbaugh* and *David L. Petitjean,* in support of respondents for *amici curiae*, Ohio Manufacturers' Associations and Ohio Chamber of Commerce.

*Vorys, Sater, Seymour & Pease*, *William D. Kloss*, *C. William O'Neill* and *Laura Westfall Casey*, for *amicus curiae*, Ohio Insurance Institute.

*Bricker & Eckler*, *Thomas E. Workman* and *David A. Martin*, for *amicus curiae*, Association of Ohio Life Insurance Companies.

_____

**MOYER, C.J.**

{¶ 15} The question presented in this original action is whether, under R.C. 149.43, the relators are entitled to requested records held by the Ohio Department of Insurance and pertaining to the acquisition of Blue Cross by Columbia. Our analysis of the law and the evidence before us causes us to conclude that the Department must disclose the requested documents, as redacted by this court, pursuant to R.C. 149.43. We conclude that the documents are not confidential work papers under R.C. 3901.48. Further, we have conducted an *in camera* review and have determined that some documents, or portions thereof, constitute trade secrets pursuant to R.C. 1333.61(D). We redact those portions of the records that are trade secrets. Accordingly, we grant the relators a limited writ of mandamus.

I

{¶ 16} A preliminary question in resolving this public records dispute is whether the Department's denial of the proposed acquisition subsequent to the filing of this action renders this case moot. Cases are not moot when an actual controversy exists between adverse litigants. See *Cullen v. State ex rel. Toledo*

7

(1922), 105 Ohio St. 545, 138 N.E. 58.  In a mandamus action, a writ will be denied when a question presented by the relator becomes moot.  See *State ex rel. Breaux v. Cuyahoga Cty. Court of Common Pleas* (1977), 50 Ohio St.2d 164, 4 O.O.3d 352, 363 N.E.2d 743; *Maranze v. Montgomery Cty. Bd. of Elections* (1958), 167 Ohio St. 323, 4 O.O.2d 401, 148 N.E.2d 229.

**{¶ 17}** Although the Department ultimately denied the proposed acquisition, this action is not about the acquisition itself.  Rather, the subject of this dispute concerns records related to the acquisition, and the availability of those records under R.C. 149.43.  Given the language in R.C. 149.43(B) that "[a]ll public records shall be promptly prepared and made available for inspection to any person," the analysis in any public records case centers on the availability of the records, not the content or the underlying event giving rise to the creation or submission of the disputed documents.

**{¶ 18}** We observe that in many public records cases, the defining event that leads to the creation or submission of documents that trigger a public records dispute is complete by the time the dispute arises.  Documents of those events, such as minutes of meetings or files created pursuant to a governmental regulatory or oversight process, are routinely made available to the public in order to serve the purpose of the Public Records Act.  Since the records in question here are kept by the Ohio Department of Insurance, a public office, and since the availability of those records is in dispute, there exists an actual controversy in this case, and, accordingly, R.C. 149.43 compels us to resolve it.

II

A

**{¶ 19}** The Ohio Public Records Act is intended to be liberally construed "to ensure that governmental records be open and made available to the public *** subject to only a few very limited and narrow exceptions." *State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 549, 597 N.E.2d 147, 151. A citizen therefore may gain access to records kept by a public office unless the requested records fall within an exception to the Act. Among those exceptions is a provision that prohibits disclosure of "records the release of which is prohibited by state or federal law." R.C. 149.43 (A)(1).

**{¶ 20}** The Department and Blue Cross rely on this exception in contending that the documents sought by the relators are exempt from public disclosure. They assert that the records are confidential work papers under R.C. 3901.48, submitted solely for an examination conducted under the authority of R.C. 3901.07. We disagree.

**{¶ 21}** R.C. 3901.07, which authorizes the Superintendent to conduct examinations on behalf of the Department, provides, in pertinent part:

"The superintendent, or any person appointed by him, shall examine each domestic insurer at least once every three years as to its condition, fulfillment of its contractual obligations, and compliance with applicable laws, provided that he may defer making the examination for a longer period not to exceed five years." R.C. 3901.07(B)(3).

"In scheduling and determining the nature, scope, and frequency of any examination authorized or required by division (B) of this section, the superintendent shall consider such matters as the results of financial statement analyses and ratios, changes in management or ownership, actuarial opinions, reports of independent certified public accountants, and any other criteria he considers appropriate." R.C. 3901.07(C).

**{¶ 22}** R.C. 3901.48, governing disclosure of documents submitted pursuant to an examination, provides, in pertinent part:

"The work papers of the superintendent or of the person appointed by him, resulting from the conduct of an examination made pursuant to section 3901.07 of the Revised Code, are confidential and are not a public record as defined in section R.C. 149.43 of the Revised Code." R.C. 3901.48(B).

**{¶ 23}** In analyzing whether the disputed records fall within the confines of the work-paper exception to the Public Records Act, we are required by the unusual "dual track" procedure employed by the Department to consider the conduct of the Department in its care of the records as well as the nature of the documents themselves. Since the Department chose to conduct a public review pursuant to R.C. 3901.321 and an examination under R.C. 3901.07 simultaneously, we must initially resolve the determinative factual question of whether the Department requested the disputed records for the review or for the examination.

**{¶ 24}** Neither the Department nor Blue Cross contests that there is no confidentiality provision that would shield from disclosure documents submitted pursuant to an R.C. 3901.321 review. Under R.C. 3901.321, the Superintendent of the Department is required to conduct a public hearing to determine, *inter alia*, whether "[t]he acquisition is likely to be hazardous or prejudicial to the insurance-buying public." R.C. 3901.321(F)(1)(f). Clearly, the Superintendent, in conducting this inquiry, must have all relevant documents to properly complete the statutory review and to make a decision that is in the best interests of the public.

**{¶ 25}** The public-hearing requirement, together with the absence of any confidentiality provision in R.C. 3901.321, indicates that the General Assembly intended for the Department to expose its review to the public. Acquisitions and mergers of insurance companies potentially affect millions of policyholders, and this particular transaction was one of the largest and most complex ever reviewed by the Department. Accordingly, our analysis turns on whether the documents

submitted to the Department were needed to properly facilitate a review of the proposed transaction.

{¶ 26} The Form A filing, submitted pursuant to the R.C. 3901.321 review, contained an attachment that represented the principal agreement between Blue Cross and Columbia. That agreement refers to the withheld Disclosure Memoranda over seventy times. Therefore, the Form A filing itself, which all parties concede is public under R.C. 3901.321, is incomplete without the accompanying Memoranda. The Memoranda contain language stating that they are part of the principal agreement, and officials of the Department concede that the Memoranda were needed to fulfill its statutory requirement of conducting a review under R.C. 3901.321, even had there been no examination under R.C. 3901.07 being conducted at the same time.

{¶ 27} In addition, the Department's own conduct in requesting the Memoranda can only support the conclusion that the Memoranda were essential to completing the public statutory review. The first two letters from the Department to Blue Cross, dated June 27, 1996 and July 1, 1996, contained no statement that the Memoranda would be granted confidential work-paper status under R.C. 3901.48. Rather, the Department outlined a procedure by which Blue Cross could request confidential treatment of documents, and the Department would then determine whether the documents would be held confidential. The Department reversed its position later by informing Blue Cross in a letter dated August 22, 1996 that it would consider the Memoranda confidential if submitted. Yet the Department had no basis for this change in policy, as evidenced by the ample testimony in the record that there was no communication from the Department to Blue Cross requesting the Memoranda as part of the confidential examination. The Department has admitted that until late August 1996, it was uncertain in its determinations of which documents were public and which were not. It thereafter attempted to resolve its internal uncertainty by announcing that all future

submissions would be confidential under R.C. 3901.48. The Department cites the unusual nature of the transaction and the "dual-track" process as the basis for its equivocation.

{¶ 28} While we recognize the complexity of this transaction, the "dual-track" process is of no importance. Until August 22, 1996, when the Department deviated from its previous position that all material submitted to it by Blue Cross would be made public unless otherwise determined, the conduct of the Department was entirely consistent with the procedure of implementing an R.C. 3901.321 public review. For instance, the Department placed all of its correspondence to Blue Cross requesting the disputed documents in a public file. This action, however, was inconsistent with Department practice pertaining to R.C. 3901.07 examinations, where correspondence related to examinations was not made public. Additionally, members of the confidential examination team requested documents separate from the letters sent to Blue Cross requesting the Memoranda. Had the Department originally intended to consider the Memoranda confidential under R.C. 3901.48, the requests would have originated from the examination team only.

{¶ 29} The Department asserts that if the Memoranda or the other documents sought by the relators are relevant to a review under R.C. 3901.321 *and* an examination under R.C. 3901.07, the documents must be accorded work-paper status and therefore be withheld from public disclosure under R.C. 3901.48. We do not agree. In view of the intent of the General Assembly that the Public Records Act be liberally construed to favor disclosure, the stated purpose of the Department in requesting the records, and the conduct of the Department in its quest to obtain the records, we cannot accord these documents confidential work-paper status.

{¶ 30} The Department is capable of indicating the procedure pursuant to which it is requesting documents. Where a document is capable of use in both a review *and* an examination, the original purpose for collecting the document controls.

**{¶ 31}** We therefore hold that the Department must consistently and affirmatively indicate its reason for requesting documents from an insurer, and it may not later alter its position merely because the insurer has refused to submit the requested records. Where a document is requested for purposes of an R.C. 3901.321 public review, subsequent use of that document in a confidential examination cannot remove that document from the public. See *State ex rel. Cincinnati Enquirer v. Hamilton Cty*. (1996), 75 Ohio St.3d 374, 662 N.E.2d 334. In *Hamilton*, a case involving a request for 911 tapes, we did not accept the proposition that public records may later be removed from the public domain: "Once clothed with the public records cloak, the records cannot be defrocked of their status." *Id*., 75 Ohio St.3d at 378, 662 N.E.2d at 338.

**{¶ 32}** Although it may cause some administrative burden on the Department to clearly ensure that its examination and review procedures are administered independently of each other, the Department is bound to follow the legislative mandate of treating documents submitted pursuant to R.C. 3901.321 as public, and keeping confidential those documents submitted due to an R.C. 3901.07 examination. That mandate must be followed by the implementation of clear and careful procedures. We accordingly find no merit to the argument put forth by the Department that a loss of confidence in the confidentiality of submissions to the Department will occur if these documents are ordered released. Rather, our holding today, requiring the Department to clearly identify its purpose for a document request, should serve to strengthen the confidence of all parties, especially the citizens who rely on the Department and its regulatory powers.

B

{¶ 33} R.C. 3901.48 is designed to keep confidential those records which are primarily related to, and submitted pursuant to, an examination of the financial condition of an insurer. In conducting these examinations, the Department must be able to exercise its regulatory powers to the fullest extent, and granting confidentiality to documents submitted pursuant to an examination ensures that the examination is completed in the most thorough manner possible. Here, however, the nature of the documents sought by the relators indicates that that the confidentiality provision of R.C. 3901.48 cannot reasonably be applied.

{¶ 34} The documents sought do not relate to the examination. They are instead primarily related to the acquisition. The Memoranda and their indexes were needed by the Department to complete the public review and contain information that completes and supplements the terms of the principal acquisition agreement — a document already made public. Likewise, the attachments to the letters of Blue Cross dated July 30, 1996 and July 31, 1996 contain information regarding proxy process related to the acquisition, noncompetition contracts with various directors caused by the acquisition, a listing of prospective and past officers and directors, and other information related to the acquisition. We are not persuaded that those attachments were submitted pursuant to an examination under R.C. 3901.07. Rather, this information was needed by the Department to determine the full implications of the acquisition under R.C. 3901.321. Blue Cross itself indicates in its July 30, 1996 letter that it was submitting information in response to requests for purposes of the review, not for an examination. Accordingly, none of these records can be granted work-paper status under R.C. 3901.48.

{¶ 35} Additionally, the letters requested dated September 5, 1996 and September 20, 1996 do not discuss the examination, but rather the closing of the transaction, the rights of the policyholders before and after the acquisition, retirement payments to former trustees, noncompetition agreements, the status of

Blue Cross as an affiliate as defined by R.C. 3901.32, and other information related to the acquisition. None of the information in these letters can reasonably support the conclusion that these documents are confidential work papers under R.C. 3901.48.

{¶ 36} Given the nature of these documents and the totality of the actions of the Department in treating similar documents as public, we cannot accept the August 30, 1996 decision by the Department that it would treat all future submissions as confidential under R.C. 3901.48. The evidence here is clear that these documents are not protected by the work-paper privilege.

{¶ 37} For the foregoing reasons, we hold that none of the documents requested by the relators are confidential work papers under R.C. 3901.48.

III

{¶ 38} The Department and Blue Cross also contend that if the documents requested by the relators are not confidential work papers under R.C. 3901.48, then their release is prohibited because information contained within the records constitutes trade secrets that are protected from disclosure under Ohio law.

{¶ 39} When the Department instituted its review of the proposed acquisition, two statutes governing trade secrets were in effect. R.C. 1333.51 and 1333.99 provided for criminal penalties against persons unlawfully disclosing trade secret information. R.C. 1333.51 was repealed by the General Assembly on July 1, 1996. R.C. 1333.61 *et seq*., the Ohio Uniform Trade Secrets Act, enacted on July 20, 1994, and still in effect, provides for civil remedies for the misappropriation of trade secret information.

{¶ 40} The relators contend that the repeal of R.C. 1333.51 eliminates any foundation for the proposition that trade secrets are protected under the Public Records Act. They assert that the Ohio Uniform Trade Secrets Act, R.C. 1333.61 *et seq*., which is now the sole governing statute on trade secrets, contains no exceptions from disclosure under the Public Records Act. In effect, the relators

argue that the repeal of R.C. 1333.51 requires us to hold that our prior case law establishing an exemption for trade secrets under the Public Records Act, see *State ex rel. Allright Parking of Cleveland, Inc. v. Cleveland* (1992), 63 Ohio St.3d 772, 591 N.E.2d 708*; State ex rel. Seballos v. School Emp. Retirement Sys.* (1994), 70 Ohio St.3d 667, 640 N.E.2d 829, is not applicable to this action or to cases arising under R.C. 1333.61 *et seq*.

{¶ 41} This transaction, however, and the review by the Department of the acquisition began before the repeal of R.C. 1333.51. "Proceedings properly instituted under existing statutes are 'pending proceedings' and are not affected by a repeal of such statutes, where the repealing statute does not provide therefor, but may be completed thereunder as though they had not been repealed." *State ex rel. Speeth v. Carney* (1955), 163 Ohio St. 159, 56 O.O. 194, 126 N.E.2d 449, paragraph eleven of the syllabus. Since the review by the Department was instituted prior to the repeal of R.C. 1333.51, the review was a pending proceeding at the time of the repeal of the statute. The repealing statute, 1995 Am.Sub.S.B. No. 2, made no provision for retroactivity. Accordingly, R.C. 1333.51 and our decisions in *Allright* and *Seballos* apply in determining the validity of the trade secret claims made by Blue Cross and the Department.

{¶ 42} In determining whether information submitted to a public agency is exempt from disclosure pursuant to trade secret status under R.C. 1333.51, we have applied a two-step analysis. See *State ex rel. Allright Parking v. Cleveland*, 63 Ohio St.3d at 776, 591 N.E.2d at 711. First, the court in which the action is brought must undertake an *in camera* review of the documents to determine if the documents contain trade secret information. If the documents do not contain trade secrets, full disclosure is required. However, if any of the documents do contain trade secrets, the court must determine whether the statutory requirements for submitting the documents explicitly places them in the public record. See *id.; State ex rel. Seballos v. School Emp. Retirement Sys*., 70 Ohio St.3d at 670, 640 N.E.2d

at 832. Where the statute requiring submission of the documents is silent as to the public record status of the submissions, information in the submitted documents that constitutes trade secrets pursuant to R.C. 1333.51 is exempt from public disclosure. See *Seballos* at 671, 640 N.E.2d at 832.

{¶ 43} In the instant case, the statute requiring the submission of the documents requested by the relators, R.C. 3901.321, is silent as to the public records status of the documents. The statute does require a public hearing as outlined in R.C. 3901.321(F)(1), but does not expressly state that material submitted to the Department pursuant to the statute is a matter of public record under the Public Records Act. Therefore, any portions of the documents in dispute here that are determined to be trade secrets are not public records and are exempt from disclosure.

{¶ 44} Former R.C. 1333.51 defined "trade secrets" according to the definition provided in R.C. 1333.61, the Uniform Trade Secrets Act. 145 Ohio Laws, Part III, 5403. R.C. 1333.61(D) states:

" 'Trade secret' means any information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

"(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

"(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

{¶ 45} Additionally, the Eighth District Court of Appeals has set forth the following factors which should be considered in analyzing a trade secret claim:

{¶ 46} (1) The extent to which the information is known outside the business;  (2) the extent to which it is known to those inside the business, *i.e.*, by the employees;  (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information;  (4) the savings effected and the value to the holder in having the information as against competitors;  (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Pyromatics, Inc.  v. Petruziello* (1983), 7 Ohio App.3d 131, 134-135, 7 OBR 165, 169, 454 N.E.2d 588, 592; see *Water Mgt., Inc. v. Stayanchi* (1984), 15 Ohio St.3d 83, 86, 15 OBR 186, 188, 472 N.E.2d 715, 718.  A business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status.  *Water Management* at 85-86, 15 OBR at 187-188, 472 N.E.2d at 718.  A claimant asserting trade secret status has the burden to identify and demonstrate that the material is included in categories of protected information under the statute.  See *Amoco Prod. Co. v. Laird* (Ind.1993), 622 N.E.2d 912.

{¶ 47} We adopt the foregoing factors in determining whether a trade secret claim meets the statutory definition as codified in R.C. 1333.61(D), and apply that definition to the trade secret claims made in the instant case.

July 30, 1996 Letter and Attachments

{¶ 48} Relators first seek to compel disclosure of the July 30, 1996 letter from the law firm representing Blue Cross—Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A. ("Climaco")—to the Department, including the attachments to the letter.  The letter is enumerated "Document 1" in the Index to Documents Withheld filed with this court.  The attachments to this letter are enumerated as Documents 2 through 12.  Blue Cross no longer asserts trade secret status for Documents 1, 9, 11, and 12.  Therefore, we grant disclosure of those documents.

18

**{¶ 49}** Blue Cross redacted portions of Documents 2 through 8 prior to filing these documents with the Department as attachments to the July 30, 1996 letter. Blue Cross made these redactions in spite of the stated procedure of the Department requiring both redacted *and* unredacted copies to be filed in the event of a trade secret claim. Pursuant to an order of July 16, 1997 of this court, Blue Cross submitted unredacted copies of these documents. In their petition, the relators seek only those documents actually filed with the Department. Therefore, our discussion and any disclosure of Documents 2 through 8 are limited to their redacted form only. We do, however, caution that private parties may not attempt to avoid the full force of the Public Records Act by filing redacted documents with a "public office" as defined by R.C. 149.43.

**{¶ 50}** Blue Cross no longer asserts trade secret status for Documents 2 and 3. Therefore, we grant disclosure of these documents in their redacted form.

**{¶ 51}** Blue Cross does assert that Documents 4, 5, 6, 7, 8, and 10 are trade secrets because they are concerned with strategy, planning, negotiations, and corporate compensation. We disagree. R.C. 1333.61(D)(1) provides that a trade secret will contain "business information or plans, [or] financial information * * * that * * * derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."

**{¶ 52}** The documents at issue here concern the negotiations between Blue Cross and Columbia regarding how to settle the issues relating to the language in the principal agreement. They do not disclose any information about the business of Blue Cross or its business plans. The documents are negotiation documents for a sale that did not ultimately occur. Documents pertaining to draft contracts, bids, and letters of negotiation are not trade secrets. See *Wisconsin Elec. Power Co. v Pub. Serv. Comm. of Wisconsin* (1983), 110 Wis.2d 530, 329 N.W.2d 1278. Information related to a single, ephemeral event in the conduct of a business does

not meet the requirement that a trade secret be "a process or device for continuous use in the operation of the business." Restatement of the Law, Torts (1939), Section 757, Comment *b*. Therefore, these documents do not fit within the definition of trade secrets contained in R.C. 1333.61(D).

{¶ **53**} Although the information in the documents at issue is not generally known outside the business, there is no discernible value attributable to Blue Cross in having this information as against competitors, particularly since the transaction has been subsequently disapproved. In addition, Document 10, a three-year pro forma balance sheet of Blue Cross projecting five percent annual increases to the balance sheet of December 31, 1995, does not reveal any information not already published other than anticipated increases in revenue and expenses. For the foregoing reasons, we order disclosure of Documents 4, 5, 6, 7, and 8 in their redacted form and Document 10.

July 31, 1996 Letter and Attachments

{¶ **54**} Relators also seek disclosure of a letter dated July 31, 1996, from Climaco to the Department, along with attachments to that letter. The letter is enumerated as "Document 13," and its attachments are enumerated as Documents 14 through 23. Blue Cross no longer asserts trade secret status for Documents 13, 16, 17, 18, 19, 20, 21, and 22. Therefore, we grant disclosure of these documents.

{¶ **55**} Blue Cross contends that Documents 14, 15, and 23 constitute trade secrets because they are the subject of a confidentiality agreement with Columbia and because the documents relate to strategy, planning, negotiations, and corporate compensation. This contention is meritless. For the reasons stated in our analysis of the July 30, 1996 letter and its attachments, documents that pertain to draft agreements, negotiations, or other events ephemeral in the conduct of the business are not trade secrets. Documents 14 and 15, as redacted, are draft consulting and noncompetition agreements that do not disclose any information about the business of Blue Cross or its business plans. Document 23 is a report of the number and

20

percentages of proxies held by Blue Cross.  Blue Cross subsequently revealed this information in a press release.  Document 23 does not reveal any financial information; it merely audits the proxy process.

{¶ 56} Further, we do not agree that the mere existence of a confidentiality agreement between Blue Cross and Columbia can prevent disclosure of records that are not determined to be trade secrets and are otherwise subject to disclosure under the Public Records Act.  Blue Cross has not provided this court with such an agreement. It refers to an agreement in the July 31, 1996 letter.  Assuming, *arguendo*, the existence of an agreement, an agreement of confidentiality, standing alone, cannot support a trade secret claim for documents referred to in such an agreement.  Without other demonstrable facts to support a trade secret claim, a party could easily use a confidentiality agreement as a shield against disclosure.  A party thus cannot meet the statutory trade secret definition by stating that documents for which trade secret status is claimed are protected merely by reference to them in an agreement of confidentiality.

{¶ 57} Therefore, Blue Cross has failed to demonstrate that these documents meet the statutory definition of trade secrets.  Accordingly, we order the release of Documents 14, 15, and 23.  The release of Documents 14 and 15 is limited to the redacted versions filed with the Department.

August 12, 1996 Letter and Attachments

{¶ 58} The third document sought is a letter dated August 12, 1996 from Climaco to the Department along with its attachments.  The letter is referred to by Blue Cross as "Document 24."  The attachments are an index to the Disclosure Memorandum of Blue Cross (Document 25) and an index to the Disclosure Memorandum of Columbia (Document 26).  Blue Cross no longer claims trade secret status for the letter.  Accordingly, we grant disclosure of the letter.

{¶ 59} Blue Cross asserts trade secret status for the indexes to the Disclosure Memoranda, claiming that the indexes summarize the contents of the

Disclosure Memoranda and therefore contain trade secrets as defined by R.C. 1333.61(D). We disagree. Our *in camera* review of the indexes to the Memoranda indicates that both the index to the Blue Cross Disclosure Memorandum and the index to the Columbia Disclosure Memorandum are nothing more than a highly generalized description of the Memoranda. The indexes do not reveal the substance of any business information that might yield economic value to a competitor. Additionally, Blue Cross did not expend great time and expense in creating the indexes. See *Pyromatics*, 7 Ohio App.3d at 134-135, 7 OBR at 169, 454 N.E.2d at 592. Thus, we grant disclosure of the indexes (Documents 25 and 26). We redact certain language in sections 4.6, 4.12, and 4.14 of Document 25, the Blue Cross Disclosure Memoranda, that refers to federal tax matters and is confidential pursuant to Section 6103, Title 26, U.S.Code.

### August 28, 1996 Letter and Attachments

{¶ 60} The next document sought by the relators is a letter from Climaco to the Department dated August 28, 1996 (Document 27), with attachments enumerated as Documents 33, 34, and 36 through 42. Also attached to this letter are the Disclosure Memoranda (Documents 28 and 29). Blue Cross asserts trade secret status for paragraphs four and seven of the letter under the heading "General Information Questions." Paragraph four refers to the pro forma balance sheets that we have already ordered disclosed. Paragraph seven discusses information pertinent to retained business subsequent to the transaction. This information relates strictly to the proposed sale. Accordingly, it is not information kept as part of the ongoing conduct of the business, and it derives no independent economic value to competitors pursuant to the statutory definition. Therefore, we grant disclosure of the entire letter.

{¶ 61} Blue Cross no longer asserts trade secret status for Documents 33, 34, and 36 through 42. Therefore, we grant disclosure of these documents. Blue

Cross is not required to disclose Document 35, as the relators do not request access to that document.

**{¶ 62}** We turn now to the trade secret status of the Disclosure Memoranda. Blue Cross first claims that that both Memoranda are protected from disclosure in their entirety as trade secrets because they constitute "information, including the whole or any portion or phase of any * * * *compilation*," as outlined in R.C. 1333.61(D). We reject this contention. Blue Cross appears to argue either that a set of documents not constituting trade secrets separately may be trade secrets when considered together, or simply that the Memoranda constitute a compilation that creates a trade secret document. Under either argument, the contention of Blue Cross is meritless.

**{¶ 63}** Assuming, *arguendo*, that the Memoranda are a "compilation," the statute requires first that the information sought must have an independent economic value. R.C. 1333.61(D)(1); see *Hoffmann-LaRoche Inc. v. Yoder* (S.D.Ohio 1997), 950 F.Supp 1348, 1358. The Memoranda do not satisfy this requirement. They are composed of documents already in the public domain and also of non-public documents. Where documents already in the public domain are combined to form a larger document, a trade secret may exist if the unified result would afford a party a competitive advantage. See *Anaconda Co. v. Metric Tool & Die Co*. (E.D.Pa.1980), 485 F.Supp. 410, 422. In the instant case, the Memoranda do not afford Blue Cross any competitive advantage, nor would a competitor acquire such an advantage. Most of the documents in the Memoranda contain information that can be found in annual reports of the company or in documents that are already public and available to potential competitors.

**{¶ 64}** In addition, R.C. 1333.61 grants a document trade secret status only if the information is not generally known or readily ascertainable to the public. R.C. 1333.61(D)(1). Here, many of the documents compiled in the Memoranda are already public documents, such as the title to properties owned by Blue Cross,

matters involving its financial structure that appear regularly on its annual statement, and pending litigation. Although some of the other information may not have been released into the public domain, the presence of information already made public prevents us from concluding that the Memoranda, as a whole, are a document that is not generally known to the public.

**{¶ 65}** We further observe that the Memoranda were needed by the Department to complete the public review under R.C. 3901.321. The principal agreement filed by Blue Cross refers to the Disclosure Memoranda over seventy times. The ramifications of that agreement cannot be fully understood either by the public or the Department without the Memoranda. Thus, the Memoranda, as an essential part of an agreement already made public, cannot be viewed as a document containing such largely sensitive business information that it should be classified, in its entirety, as a trade secret. Accordingly, we hold that the Disclosure Memoranda, in their entirety, do not constitute a compilation of information under the trade secret statute.

**{¶ 66}** We do, however, grant Blue Cross trade secret protection pursuant to R.C. 1333.61(D) over individual items in its Disclosure Memorandum that constitute financial information and have an economic value to Blue Cross or its competitors. These sections of the Disclosure Memorandum concern financial data relevant to the ongoing business of Blue Cross and do not relate directly to the transaction, nor do the sections contain information that is merely momentary or ephemeral to the company. Pursuant to this standard, we grant redaction of the following sections:

(1) Section 2.3(c), because it lists specific data on asset values of Blue Cross; and

(2) Section 2.3(d), a trial balance sheet detailing amounts held in every financial account of Blue Cross.

**{¶ 67}** We also grant redaction of the parts of the Blue Cross Disclosure Memorandum that constitute business information or plans that are of economic value to either Blue Cross or its competitors. Those items, which are also part of the ongoing business of Blue Cross and are not momentary or directly tied to the transaction are as follows:

(1) Section 4.4, because it describes a proposed business venture unrelated to the transaction;

(2) Paragraph three of section 4.7(D), because it discloses the terms of a contract with a major customer;

(3) Sections 4.7(a) and (b), which disclose personal property contracts and leases;

(4) A portion of section 4.11 that refers to a proposed real estate purchase agreement unrelated to the transaction;

(5) Paragraphs three, five, six, and seven of section 4.13, which disclose terms of contracts with subsidiaries or other organizations;

(6) Paragraphs two, seven, ten, eleven, twelve, and thirteen of section 4.18, which disclose existing contracts with health providers, pharmacies, and other organizations;

(7) Paragraph five of section 4.18, which refers to employee insurance policies;

(8) Section 4.18(a) -1, listing all personal property contracts and leases;

(9) Section 4.19, which sets forth employee benefit plans;

(10) Section 4.20, which lists life insurance policies of Blue Cross and other related agreements of a Blue Cross subsidiary;

(11) A portion of section 4.21 that refers to a private contract made in February 1995 that is not related to the agreement; and

(12) Paragraphs two, three, four, and part (d) of paragraph one of section 4.23, because it contains details about ongoing affiliation agreements and proposed affiliation agreements with third parties not part of the transaction.

{¶ 68} Further, we grant redaction of the following items, the release of which is prohibited under Section 6103, Title 26, U.S.Code:

(1) A portion of section 4.6;

(2) Paragraphs five, six, and seven of section 4.12;

(3) Paragraphs one through eight of section 4.14; and

(4) Section 4.14(a).

{¶ 69} We further observe that the items we redact above are not generally known outside the corporate walls of Blue Cross, and that in many cases Blue Cross has likely expended great time and effort in guarding the secrecy of its private contracts, business ventures, and agreements related to those ventures. Our conclusions thus are consistent with the factors enunciated in *Pyromatics*.

{¶ 70} None of the other information contained in the Disclosure Memorandum of Blue Cross is entitled to trade secret protection under R.C. 1333.61(D). Accordingly, we grant disclosure of the remainder of the document. We also grant full disclosure of the Columbia Disclosure Memorandum, since it neither is a trade secret of Blue Cross nor contains any information that would be considered trade secrets under the statute.

### September 5, 1996 Letter

{¶ 71} Blue Cross no longer asserts trade secret protection for a letter, sought by the relators, issued from the Department to Climaco dated September 5, 1996, referred to as "Document 43". We therefore grant disclosure of this document.

### September 20, 1996 Letter and Attachments

{¶ 72} The final set of documents requested by the relators is a letter dated September 20, 1996 from Climaco to the Department (referred to as "Document

44") and its attachments. Blue Cross no longer asserts trade secret protection for attachments enumerated as Documents 46, 47, 48, 50 through 85, 87, and 88. Therefore, we grant disclosure of these documents.

{¶ 73} Blue Cross claims trade secret status for the September 20, 1996 letter and attachments referred to as Documents 45, 49, and 86. The letter contains no trade secret information except for three sections on page thirteen that discuss agreements entered into and investments made by Blue Cross with Dean Witter. These agreements were private and unrelated to the transaction, and constitute financial information about Blue Cross that is economically valuable. Accordingly, we grant disclosure of the letter, Document 44, except for the first three subsections under section 9, subpart "Direct," on page thirteen.

{¶ 74} Document 45 is a letter discussing benefits for retiring trustees. These benefits were a substantial part of the transaction. We are not persuaded that this information is the type of information that would retain any economic value for either Blue Cross or its competitors. Blue Cross retains no value by holding this information as against competitors. Cf. *Pyromatics*, 7 Ohio App.3d at 136, 7 OBR at 171, 454 N.E.2d at 594. Additionally, the letter is a momentary, ephemeral event in the life of the business that now retains little value given the subsequent rejection of the transaction. Therefore, this letter is not a trade secret pursuant to the statute, and we grant its disclosure.

{¶ 75} Document 49 is a record of minutes from a meeting of the Board of Trustees of Blue Cross in which the trustees adopted a retirement program for departing trustees. For the reasons stated above, and also because the remainder of the minutes contain information that would be publicly available in the annual report of Blue Cross, we grant disclosure of this document except for the Finance Committee Report and the Financial Report on page two of the document, which are protected as trade secrets containing economically valuable financial information pursuant to R.C. 1333.61(D).

**{¶ 76}** Document 86 is a letter confirming that Blue Cross engaged Dean Witter to render an opinion as to the fairness, in a financial respect, of the proposed transaction. Blue Cross asserts that a confidentiality agreement with Dean Witter establishes this document as a trade secret. We disagree. An agreement of confidentiality between two private parties cannot alone establish trade secret protection. Pursuant to the statute, the item for which trade secret protection is claimed must also have some independent economic value. R.C. 1333.61(D)(1). Although Blue Cross did undertake efforts here to maintain the secrecy of this document pursuant to R.C. 1333.61(D)(2), this document has no economic value to be derived either by Blue Cross or its competitors. Therefore, the letter is not entitled to trade secret protection under the statute, and we grant its disclosure.

IV

**{¶ 77}** Having determined that the law supports no application of the confidentiality provisions of R.C. 3901.48 to the documents sought by the relators, and having conducted an *in camera* review, pursuant to our authority in *Allright Parking*, that has analyzed trade secret claims asserted by Blue Cross, we grant the relators a limited writ of mandamus. We redact, pursuant to *Allright Parking* and *Seballos*, those portions of the documents sought by the relators that we have determined from our *in camera* review to be trade secrets as defined by R.C. 1333.61(D).

*Limited writ granted.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

Cook and LUNDBERG STRATTON, JJ., concur in judgment only.

DOUGLAS, J., not participating.

———————————

**COOK, J., concurring in judgment only.**

{¶ 78} I believe that the proper inquiry in this case is whether the Ohio Department of Insurance ("the Department") abused its discretion when it conferred confidential work paper status upon certain documents by classifying those documents as having been gathered solely as R.C. 3901.07 examination documents, despite its purpose to use the documents for its R.C. 3901.321 review.

{¶ 79} The parties do not dispute that a Form A filing pursuant to R.C. 3901.321 review is a public record subject to disclosure or that information gathered during an R.C. 3901.07 examination is confidential as "work papers" under R.C. 3901.48(B). Moreover, the majority correctly posits that the Department's use of a document in an R.C. 3901.07 examination should not prohibit its public availability when it is also submitted pursuant to an R.C. 3901.321 review. Given each of these facts, however, it remains the Department's responsibility to determine what information, beyond the statutory rudiments, an acquiring party must submit to satisfy the Form A requirements and, hence, what information belongs in the R.C. 3901.321 public file.

{¶ 80} In conjunction with an R.C. 3901.321 review, the Department receives a Form A filing containing statutorily prescribed information about the party seeking to acquire a domestic insurer and the terms of the acquisition. Although R.C. 3901.321(C) acts as a guide for determining the information that must be included in a Form A submission, that filing is made by the acquiring party, leaving the Department to determine what supplements are necessary. The Department may request supplements to the Form A submission and may condition its approval of the acquisition on supplementation.

{¶ 81} Here, as noted by the majority, the Department's original requests indicate that it sought the disputed documents to supplement the Form A filing and changed its course only after a failure to comply, and the nature of the documents in question is such that they relate primarily to the R.C. 3901.321 review, not the

R.C. 3901.07 examination. The Department itself concedes that the Form A filing would be incomplete without the Disclosure Memorandum. Additionally, the deposition testimony of David Randall, the Department's deputy superintendent, reveals that at least part of the motivation for treating the documents as confidential work papers was to reduce the departmental frustration caused by the necessity of classifying each document received as either public or private depending on its content.

{¶ 82} Here it is the combination of these factors, and not any factor in isolation, that demonstrates an abuse of discretion on the part of the Department in classifying the documents at issue as solely relating to the R.C. 3901.07 examination — a classification that avoided their public disclosure. In mandamus cases, this court has defined an abuse of discretion as "discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *State ex rel. Lucas Cty. Democratic Executive Commt. v. Brown* (1974), 39 Ohio St.2d 157, 161, 68 O.O.2d 100, 103, 314 N.E.2d 376, 379. This is the rare case where the relator has met that standard of proof. It is, however, an aberrant case that should not serve as a paradigm for fashioning the broader rules of law stated by the majority.

{¶ 83} Because I agree with the majority's treatment of the trade secrets issue and would reach the same disposition with respect to the confidential work papers issue under an abuse of discretion analysis, I concur in judgment only.

LUNDBERG STRATTON, J., concurs in the foregoing concurring opinion.

_____