NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0012n.06
Filed: January 7, 2008

No. 07-3403

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HEARTLAND HOME FINANCE, INC.;<br>MORTGAGE DATA INC., | ) <br> ) <br> ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| *Plaintiffs-Appellants*, | ) <br> ) | |
| v. | ) <br> ) | **O P I N I O N** |
| ALLIED HOME MORTGAGE CAPITAL<br>CORPORATION, | ) <br> ) | |
| *Defendant-Appellee*. | | |

BEFORE:    DAUGHTREY and COLE, Circuit Judges; COLLIER, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.**  Plaintiffs-Appellants Heartland Home Finance,

Inc. ("Heartland"), an Illinois-based corporation, and Mortgage Data, Inc. d/b/a Active Response

Marketing ("ARM"), appeal the district court's grant of summary judgment to Defendant-

Appellee Allied Home Mortgage Capital Corporation ("Allied").  Heartland and ARM cooperate

in the business of mortgage brokering and lending in the State of Ohio.  Heartland is responsible

for actually providing the funds and services for homeowners, while ARM solicits prospective

customers for various mortgage brokers, including Heartland.  Allied is a Texas-based

---

[*] The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

corporation engaged in much of the same business as Heartland.

Heartland and ARM allege that Allied stole and used confidential internet "leads"—or records of prospective customers—and unjustly profited by accepting business from customers solicited as a result of those misappropriated leads in violation of Ohio Revised Code ("O.R.C.") § 1333.61, *et seq*. Heartland and Allied contend that these leads, which are records containing the names, address, contact information, and some basic credit information of people interested in obtaining a new loan, constitute proprietary trade secrets under Ohio law.

Ohio defines trade secret to mean:

> Information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.R.C. § 1333.61(D). In order to prevail on a misappropriation-of-trade-secret claim, a plaintiff must show by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *Hoover Transp. Serv., Inc. v. Frye*, 77 F. App'x 776, 782 (6th Cir. 2003) (per curiam).

The Supreme Court of Ohio has adopted six factors for consideration in determining whether an item constitutes a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997). Although the court has never found one factor dispositive, it has emphasized that "[a] business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *Id.* Indeed, "[o]nce material has been publicly disclosed, it loses any status it ever had as a trade secret." *State ex rel. Rea v. Ohio Dept. of Educ.*, 692 N.E.2d 596, 601 (Ohio 1998). Moreover, the plaintiffs bear the burden to identify and demonstrate that the information at issue is protected information under Ohio law. *Id.*

Considering the six factors enumerated above, the district court concluded that: (1) the sheets containing internet leads were not trade secrets; (2) Heartland did not take adequate precautions to guard the internet leads; and (3) Heartland failed to present sufficient evidence from which a jury could conclude that Allied misappropriated the trade secrets. Although we review de novo a district court's grant of summary judgment, *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006), the persuasive reasoning that supports the judgment in favor of Allied has been clearly articulated by the district court in its opinion below. After the benefit of hearing oral argument, we conclude that the issuance of a detailed written opinion by us would be unnecessarily duplicative. The judgment rendered by the Honorable Patricia A.

Gaughan on February 5, 2007, is accordingly affirmed on the basis of the reasoning contained in those documents.

In adopting the district court's opinion below, we note one minor caveat. The district court found in favor of Allied on both the second and third factors, which ask whether Heartland took sufficient active steps to maintain the secrecy of the leads both inside and outside of the company. Contrary to the district court's analysis, we conclude that the protections need only be "reasonable" under the circumstances. For example, in *Siegel v. Arter & Hadden*, 707 N.E.2d 853 (Ohio 1999), the court found that the customer list at issue was a trade secret because the employer maintained the list on a computer in a password-protected file; kept copies of the customer list in a filing cabinet that was sometimes locked; and "probably" told its employees that its customer list was confidential and not to be removed from the office. *Id.* at 862. Here, the record reflects that Heartland had a policy of non-disclosure with its own loan officers, even if it did not with ARM or Lake Data. The record also reflects that the compilation and distribution of internet leads were subject to at least some protective measures similar to the ones in *Siegel*.

With this caveat in mind, we conclude that the district court correctly found that the other factors weighed heavily in favor of Allied. The leads in question do not disclose any information about the business of Heartland or its business plans, and the fact that the leads may have been converted into successful sales is irrelevant. As represented by Heartland, the documents are merely "raw data" used to garner mortgage sales and not, for example, carefully developed product designs, sale goals, or client lists. Plainly stated, information that is openly available on

the market at minimal cost is not the type of data Ohio courts have considered to be trade secrets. *See Carp Corp. v. Linder*, No. 80589, 2002 WL 31667316, *5 (Ohio App. 8th Dist. Nov. 27, 2002) (readily ascertainable customer lists do not constitute trade secrets).

For the aforementioned reasons, we affirm the judgment rendered by the district court.