DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiff-appellant/cross-appellee, IPI, Inc. ("IPI"), appeals from a judgment of the Lucas County Court of Common Pleas. IPI contends that the following errors occurred in the proceedings below: *Page 2 
 {¶ 2} "Whether the trial court erred when it granted defendants' motion to dismiss by holding that IPI is not a real party in interest and that IPI has not sustained any damages as a result of defendants[sic] operating as a `renegade' franchisee?" [sic]
 {¶ 3} "Whether the trial court erred when it failed to grant plaintiffs motion for a preliminary injunction?" [sic]
 {¶ 4} Defendants-appellees/cross-appellants; Epic Photography, L.L.C. ("Epic"), Aaron Monaghan, Angela Monaghan, and Anthony Yockey; assert two cross-assignments of error:
 {¶ 5} "The trial court erred when it granted cross-appellee's motion to strike Aaron Monaghan's affidavit because Aaron Monaghan's affidavit is based on personal knowledge.
 {¶ 6} "The trial court erroneously granted the motion for summary judgment since it erroneously struck affidavit evidence properly supporting the opposition to the motion."
 {¶ 7} IPI is a company that developed a plan for "event" photography, e.g., Santa Claus programs, golfing events and youth sporting events, which involves not only the taking of the photographs at a special event, but also the production and sale of the photographs on site. In 1998, IPI began selling franchises for its event photography nationwide. Two of IPI's franchisees, located in Toledo and Cleveland, cover specified territory in the state of Ohio. The Toledo franchise is Visual Marketing, Ltd. ("Visual Marketing"). Visual Marketing paid IPI $20,000 for its franchise for a five year period *Page 3 
(An additional payment of $5,000 upon the expiration of the five year period extends the franchise for a second five year period.) and also pays IPI a percentage of the monies it makes from event photography. In return, no other IPI franchise can operate in Visual Marketing's geographical area, northwest Ohio.
 {¶ 8} At one point, Aaron, Angela Monaghan, and Anthony Yockey worked for IPI. Anthony Yockey allegedly worked as an independent contractor for IPI in 2003. His job was "to evaluate, develop and integrate a web-based auction software program" for IPI. While IPI maintains that Anthony signed a non-compete agreement with that company, it failed to offer any evidence of this agreement. Aaron Monaghan, who entered into a non-compete agreement with IPI, as set forth below, worked as a general associate for IPI from November 1998 until April 2002. Aaron then left his employment with IPI and began working for Visual Marketing. It is undisputed that Aaron entered into a non-compete agreement with Visual Marketing at the time of his employment. Angela Monaghan, Aaron's wife, was the assistant to the president of IPI, Steven Hardin, until September 16, 2004, when Hardin learned that Aaron and Anthony had formed Epic and were competing in the same area as Visual Marketing. Hardin then terminated Angela's employment.
 {¶ 9} On January 11, 2001, Aaron and Angela each signed an "Employee Acknowledgment Form" that contained IPI's non-compete clause, which reads:
 {¶ 10} "IPI has developed strong customer relations over the past fifteen years of business. All IPI employees have some access to confidential business information, trade *Page 4 
secrets, and customer files which are vital to the interest and success of IPI. Therefore, when an employee leaves IPI, the employee is required to turn over all files and customer leads to the proper supervisor and agrees not to compete in the same business as IPI for a two year period."
 {¶ 11} IPI filed a complaint against appellees/cross-appellants on November 14, 2004. According to IPI's complaint, Aaron Monaghan, Angela Monaghan, and Anthony Yockey, breached their contracts, that is, breached the non-compete clauses entered into by appellees/cross-appellants when they were employed by IPI. IPI also set forth a claim, pursuant to R.C. Chapter 1333.61, the Uniform Trade Secrets Act, requesting injunctive relief, as well as compensatory and punitive damages. IPI alleged that appellees/cross-appellants misappropriated "trade secrets" related to IPI's specialized processes and information vis-a-vis event photography, thereby "stealing" IPI's franchise system. IPI's complaint further raised a claim of unlawful competition. The complaint requested monetary damages, injunctive relief, and punitive damages.
 {¶ 12} Appellees/cross-appellants filed an answer to IPI's complaint and counterclaims based upon: (1) defamation through IPI's "owners, managers, supervisors, etc."; (2) the filing of a frivolous lawsuit because appellees/cross-appellants already settled with IPI's franchisee; and (3) intentional interference with business contracts. After IPI filed an answer to their counterclaims, appellees/cross-appellants filed a motion to dismiss IPI's case because IPI was not the real party in interest. Specifically, appellees/cross-appellants asserted that IPI sold its franchise in northwest Ohio to Visual *Page 5 
Marketing; therefore, Visual Marketing was the real party in interest because appellees/cross-appellants were engaging in event photography in Visual Marketing's territory. Appellees/cross-appellants also maintained that Visual Marketing did bring suit against appellees/cross-appellants in which it raised the same claims as IPI and that the parties to that suit mediated their differences and settled the case.
 {¶ 13} Subsequently, appellees/cross-appellants filed a motion to dismiss appellant's claims based upon the allegation that IPI was not the real party in interest. IPI file a memorandum in opposition in which it argued that it was the real party in interest because appellees/cross-appellants breached their confidentiality agreements and "misappropriated" the company's "trade secrets," thereby causing IPI to suffer damages. Appellees/cross-appellants filed a reply in which they contended that IPI's "trade secrets" were actually matters of common knowledge in the photography business. They also asserted that IPI failed to show that it, rather than Visual Marketing, had suffered any damages due to the competition provided by Epic in northwest Ohio.
 {¶ 14} On July 1, 2005, the court below granted appellees/cross-appellants' motion to dismiss. Relying on Civ.R. 17(A), the trial judge found that the real party in interest was Visual Marketing because it was the entity that suffered injury as the result of appellees/cross-appellants' operation of an event photography business in the same geographic area. The court therefore granted the motion to dismiss and found IPI's request for injunctive relief and/or a temporary restraining order moot. In reaching this *Page 6 
conclusion, the court did not address the merits of IPI's claim of an alleged misappropriation of trade secrets.
 {¶ 15} In August 2006, IPI filed a motion to dismiss appellees/cross-appellants' counterclaims or for a motion for summary judgment on those claims. Appellees/cross-appellants' memorandum in opposition was supported by the affidavit of Aaron Monaghan. IPI then asked the court to strike Aaron's affidavit, alleging that the same consisted of inadmissible "double hearsay." On March 7, 2007, the trial court granted both the motion to strike Aaron's affidavit and IPI's motion for summary judgment. This timely appeal followed.
 {¶ 16} Before addressing IPI's assignments of error, we must first note that IPI relies upon evidentiary materials, e.g., the deposition of Angela Monaghan[1], that were never filed in the trial court. It is a basic proposition of appellate review that we cannot add matter to the record before us and decide this appeal based upon that new matter.State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus. See, also, Barnett v. Ohio Adult Parole Auth. (1998),81 Ohio St.3d 385, 387, 1998-Ohio-434. We shall therefore disregard any evidentiary materials that were never properly before the trial court.
 {¶ 17} In its first assignment of error, IPI argues that it is a real party in interest under Civ.R. 17(A) because it is a third-party beneficiary under Aaron Monaghan's *Page 7 
non-compete clause with Visual Marketing and that it has enforceable non-compete clauses with Angela Monaghan and Anthony Yockey. Initially, we find that IPI failed to offer any evidence of the existence of a non-compete agreement between Anthony Yockey and IPI. Furthermore, IPI fails to offer any evidence that Angela Monaghan has any interest in Epic Photography, L.L.C. Indeed, it is undisputed that Angela worked at IPI until September 16, 2004. Thus, we shall address only IPI's "third-party beneficiary" argument as it relates to Aaron Monaghan.
 {¶ 18} Civ.R. 17(A) provides in pertinent part:
 {¶ 19} "(A) Real party in interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought. * * *."
 {¶ 20} The purpose of Civ.R. 17(A) is to allow a defendant to avail himself of evidence and defenses that he has against the real party in interest, and to secure the finality of the judgment so that he is protected against a second suit brought by the real party in interest on the same matter. Shealy v. Campbell (1985), 20 Ohio St.3d 23, 24-25
(citations omitted). A real party in interest is "`one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself" Id. at 24-25, quoting In re HighlandHoliday Subdivision (1971), 27 Ohio App.2d 237, quoting *Page 8 Celanese Corp. of America v. John Clark Industries (C.A.5, 1954), 214 F.2d 551, 556. That is, the real party in interest directly benefits from or is injured by the outcome of the case. Id. at 24 (citations omitted).
 {¶ 21} A third-party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contractBerge v. Columbus Community Cable Access (1999), 136 Ohio App.3d 281,303. Before a third-party beneficiary can enforce that contract, however, the individual must be an intended beneficiary, as opposed to merely an incidental beneficiary. Hill v. Sonitrol of Southwestern Ohio,Inc. (1988), 36 Ohio St.3d 36, 40. It is not necessary for the third party to be expressly identified in the contract; however, the contract must have been made and entered into with the intent to benefit that individual. See Doe v. Adkins (1996), 110 Ohio App.3d 427, 436.
 {¶ 22} In the present case, Aaron Monaghan admittedly entered into a non-compete agreement with Visual Marketing. The purpose of that agreement was to preclude Epic from operating a similar photography business within Visual Marketing's territory. It was Visual Marketing, not IPI, that directly benefited from this agreement; there is no evidence in the record of this cause to establish that the parties to that agreement entered into that contract with any intent to benefit IPI. Therefore, IPI is not a third-party beneficiary/real party in interest and lacks the right to bring suit against on the same matter, that is a non-compete agreement, that was the subject of the contract between and Visual Marketing. *Page 9 
 {¶ 23} Nevertheless, a careful reading of the trial court's judgment entry reveals that while the common pleas court did not discuss whether IPI was the real party in interest on its claim for misappropriation of trade secrets, it apparently found, sub silentio, that IPI was not the real party in interest with regard to that claim and as to IPI's allegation of unfair competition.[2] The court, therefore, dismissed IPI's entire complaint.[3]
 {¶ 24} IPI's second claim is predicated upon Ohio's Uniform Trade Secret Act, R.C. Chapter 1333.61, and is a claim separate from that based upon any alleged violations of non-compete agreements. A "trade secret" is defined as
 {¶ 25} "* * * information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique,, or improvement or any business information or plans, * * * that satisfies both of the following:
 {¶ 26} "(1) It derives independent economic value, actual or potential, from being generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. *Page 10 
 {¶ 27} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D).
 {¶ 28} An actual or threatened misappropriation of a trade secret may be enjoined. R.C. 1333.62(A).
 {¶ 29} In the present case, IPI alleged that it developed, inter alia, "confidential and specialized techniques for event photography, a business marketing plan for its franchisees, a training program, and proprietary and confidential software that it makes available to its franchise systems." IPI alleged that appellees/cross-appellants misappropriated these systems, techniques, etc., that is, its alleged trade secrets. If it is shown that these are truly trade secrets and that appellees/cross-appellants misappropriated the same, IPI would be directly injured by that misappropriation. Therefore, IPI is the real party in interest on this claim.
 {¶ 30} Accordingly, IPI's first assignment of error is found not well-taken, in part, and well-taken, in part.
 {¶ 31} In its second assignment of error, IPI maintains that the trial court erred in failing to grant it injunctive relief, as well as compensatory and punitive damages, on the basis that appellees/cross-appellants misappropriated IPI's trade secrets. The trial court never addressed the merits of IPI's request for, among other things, injunctive relief and, consequently, we cannot do so on appeal. We shall, therefore, disregard IPI's second assignment of error. *Page 11 
 {¶ 32} Appellees/cross-appellants' cross-assignments of error are interrelated and shall be considered together. Appellees/cross-appellants' first assignment of error asserts that the trial court erred in striking Aaron Monaghan's affidavit filed in support of their memorandum in opposition to IPI's motion for summary judgment. In their second cross-assignment of error, appellees/cross-appellants contend that the trial court erred in granting summary judgment to IPI on their counterclaims of defamation and interference with business relationships.
 {¶ 33} Appellate courts review the grant of summary judgment de novo, applying the same standard used by the trial court. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, an appellate court reviews the same evidence that was properly before the trial court. Am. Energy Serv., Inc. v. Lekan (1992),75 Ohio App.3d 205, 208. Summary judgment is proper if there is no genuine dispute of a material fact so that the issue is a matter of law and reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 56(C); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 34} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of any genuine issue of material fact as to the essential elements of the nonmoving party's claims or defenses. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292,1996-Ohio-107. Once the moving party's burden has been satisfied, the burden shifts to the nonmoving party, as set forth in Civ.R. 56(E). Id. at 293. The nonmoving *Page 12 
party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735. Any doubt is to be resolved in favor of the nonmoving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 35} Pursuant to Civ.R. 56(C), only certain evidence and stipulations, as set forth in that section, may be considered by the court when rendering summary judgment. Specifically, the court is to consider only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact." Civ. R. 56(C). Pursuant to Civ.R. 56(E) supporting and opposing affidavits must be made on personal knowledge, must set forth facts that would be admissible into evidence, and must affirmatively show "that the affiant is competent to testify to the matters stated in the affidavit." "Personal knowledge" is defined as: "`[knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.'"Brannon v. Rinzler (1991), 77 Ohio App.3d 749, 756, quoting Black's Law Dictionary (6 Ed.1990) 873. Absent evidence to the contrary, an affiant's statement that his affidavit is based on personal knowledge will satisfy the requirement of Civ.R. 56(E). Smith v. Board of CuyahogaCty. Commrs., 8th Dist. No. 86482, 2006-Ohio-1073, ¶ 40.
 {¶ 36} In the case under consideration, the trial court struck Aaron Monaghan's affidavit because "it did not meet the requirements of Civ.R. 56(E)." Presumably, the *Page 13 
court below decided that the affidavit did not comport with Civ.R. 56(E) due to the fact that the statements made therein were not based upon Aaron's personal knowledge, but were allegedly bottomed on information relayed to by a third party. In short, the trial court determined that the statements were hearsay. We disagree.
 {¶ 37} Hearsay is a statement, other than one made by a declarant while testifying at a trial or hearing, that is offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Nonetheless, a statement by a party-opponent is not hearsay, even if it was an out-of-court statement. Evid.R. 801(D)(2)(a). In his affidavit, Aaron points to statements[4] made by Steven Hardin as the owner and President of IPI as being defamatory. As that owner and president, Hardin is a party-opponent. Therefore, the statements made by him in that capacity are non-hearsay.
 {¶ 38} With regard to the remaining declaration, Paragraph m. of Aaron Monaghan's affidavit[5], which relates to interference with Epic's business relationships is, on its face, made upon Aaron's personal knowledge. Accordingly, the trial court did err in striking Aaron's affidavit. The information in the affidavit creates a question of fact on appellees/cross-appellants' counterclaims of defamation and interference with business *Page 14 
relationships. Accordingly, appellees/cross-appellants' first and second assignments of error are found well-taken.
 {¶ 39} The judgment of the Lucas County Court of Common Pleas is reversed on IPI's claim for misappropriation of trade secrets and appellees/cross-appellants' counterclaims. This cause is remanded to that court for further proceedings consistent with this judgment. Pursuant to App.R. 24, IPI and appellees/cross-appellants are ordered to pay the costs of this appeal in equal shares. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR.
[1] This deposition was attached as an exhibit to IPI's request for an injunction and/or temporary restraining order, but it was never actually filed in the trial court.
[2] As with the non-compete agreements, IPI was not directly injured by the competition between Visual Marketing and Epic Photography and is, therefore, not the real party in interest on this claim.
[3] Appellees/cross-appellants argued in the court below that IPI was not the real party in interest on the claim sounding in misappropriation of trade secrets because the trade secrets, if any, that they allegedly misappropriated were those belonging to Visual Marketing.
[4] These include allegations that appellees/cross-appellants "stole equipment, cash, software keys, and trade secrets from IPI" and that appellees/cross-appellants are liars, unethical, and unprofessional.
[5] This paragraph reads:
"m. Employees of IPI, Inc. and family members of IPI, Inc. employees harassed Defendants and damaged equipment while Epic was working at a Christmas 2004 photo shoot for the Toledo Zoo." *Page 1