[Cite as *Salemi v. Cleveland Metroparks*, 2014-Ohio-3914.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100761**

## JOSEPH SALEMI

RELATOR

vs.

## CLEVELAND METROPARKS

RESPONDENT

**JUDGMENT:**
WRIT GRANTED IN PART AND DENIED IN PART

Writ of Mandamus
Order No. 477364
Motion No. 471447

**RELEASE DATE:** September 9, 2014

**FOR RELATOR**

Joseph Salemi
10121 Northfield Road
Northfield, OH 44067


**ATTORNEYS FOR RESPONDENT**

Rosalina M. Fini
Law Director, Cleveland Metroparks
4101 Fulton Parkway
Brooklyn, OH 44144

Jeffrey S. Appelbaum
Anthony J. Rospert
Nicole K. Wilson
Thompson Hine L.L.P.
3900 Key Center
127 Public Square
Cleveland, OH 44114

TIM McCORMACK, J.:

{¶1} Joseph Salemi has filed a complaint for a writ of mandamus through which he seeks the release of records pursuant to R.C. 149.43. Salemi has requested records from the Cleveland Metroparks ("Metroparks"). The Metroparks is the operator of eight golf courses located within northeast Ohio. Salemi is the owner and architect of Boulder Creek Golf Club, a golf course that directly competes with the eight golf courses operated by the Metroparks. For the following reasons, we grant Salemi's request for a writ of mandamus in part, and deny the request in part. In addition, we deny Salemi's request for attorney fees and statutory damages.

## I. Facts

{¶2} On September 25, 2013, Salemi sent to the Metroparks, by email, a request to provide the following:

> (1) "The email addresses for persons that have signed up for email lists for all golf courses owned or operated by the Cleveland Metro Parks currently on your data base." (Request 1)
>
> (2) "The email addresses for persons that have booked tee times on any electronic tee sheet software currently on your data base." (Request 2)
>
> (3) "The names of any persons, businesses or corporations that have had outings or events at any of the golf courses owned or operated by the Cleveland Metro Parks for the years 2012 and 2013." (Request 3)

{¶3} On September 25, 2013, the Metroparks responded to Salemi's initial request for records and indicated that the records would be provided in either paper or electronic form. On October 15, 2013, the Metroparks declined to provide any requested documents and stated that "[p]ursuant to *State ex rel. Luken v. Corp. for Findlay Mkt. of*

*Cincinnati*, 135 Ohio St.3d 416, 2013[-]Ohio[-1532, 988 N.E.2d 546], Cleveland Metroparks will not release the requested information."

**{¶4}** On October 18, 2013, Salemi made a second request, by email, for the following records:

(1) "A copy of the marketing program for the golf courses owned by the Cleveland Metro Parks." (Request 4)

(2) "Copies of all checks spent to market the golf courses." (Request 5)

(3) "A copy of the business plan to market the golf courses." (Request 6)

(4) "A copy of any and all contracts for the marketing of the golf courses with any private companies." (Request 7)

(5) "A list of the persons employed by the Metro Parks for the marketing of the golf courses." (Request 8)

(6) "A copy of their job description and any written employment contracts." (Request 9)

(7) "A list of those persons who have access to the email data base, lists of outings and golf leagues." (Request 10)

(8) "Any written directives concerning access to the above data bases and protection of the information" (Request 11)

(9) "Any companies who have shared the above information through any agreements with the Metro Parks." (Request 12)

(10) "A copy of the agreements with the Golf Channel or any other tee time reseller, including but not limited to Golfnetwork18 and Golf links, for tee time reservations and marketing." (Request 13)

(11) "A copy of the minutes, meetings, notes, and any other emails and letters concerning the marketing of the golf courses." (Request 14)

**{¶5}** On November 1, 2013, the Metroparks responded to Salemi's second request for documents and declined to provide any additional documents and stated that:

> After reviewing your request from October 18, 2013, all of your requests are related to obtaining information that has to deal with Cleveland Metroparks marketing of our golf services. As such, we are not required to disclose this information pursuant to [R.C.]149.43(A)(1)(p) since this relates to Cleveland Metroparks trade secrets. Regarding your request #8: "Any written directives concerning access to the above data bases and protection of the information," we will not disclose this information since it is protected by the attorney-client privilege.

**{¶6}** On December 16, 2013, Salemi filed a complaint for a writ of mandamus premised upon the failure of the Metroparks to provide the requested 14 categories of records. On January 14, 2014, the Metroparks filed a motion to dismiss Salemi's complaint for a writ of mandamus. Attached to the motion to dismiss was the sworn affidavit of Sanaa Julien, the Chief Marketing Officer for the Metroparks, ("affidavit I"). Affidavit I, provided in pertinent part that:

> ¶ 6. The Metroparks collects information from its golf customers and potential golf customers through a number of sources, including soliciting subscribers for its "On the Fairways" newsletters and its Facebook page, holding contests and special events, conducting surveys, and offering "Bonus Rounds" as a frequent-user rewards program for golfers at Metroparks courses. Users who provide information through these sources have the ability to opt-out of future contact, and the Metroparks' privacy policy is posted on the website.

> ¶ 7. This customer information (including email addresses) is stored in a program called "Constant Contact" (and will be referred to here as the "Customer List"). Constant Contact allows the Metroparks to conduct online marketing campaigns using the Customer List. This program has been refined and maintained by the Metroparks through considerable expense and effort.

¶ 8. The Metroparks uses the Customer List, as well as its own deep analysis of demographic information and its experience in the sports and entertainment market, to create a marketing program and business plan (the "Marketing Plan") to directly target existing Metroparks customers and expand the Metroparks' customer base.  I have significant knowledge of and experience in the sports and entertainment market, and have applied that knowledge and experience to create the Marketing Plan.

¶ 10. The Marketing Plan is not an off-the-shelf plan that could apply to any industry or "any man or woman aged 18 to 65."   It is specific to golfing customers in Northeast Ohio, and is so highly developed that the Metroparks is able to market specific courses to existing and potential customers depending on their proximity to one of the eight Metroparks courses and their past golfing habits.

* * *

¶ 12. The Customer List is not available to the public.

¶ 13. The Customer List is not available to the Golf Administration Department.

¶ 14. The Customer List is only available to seven members of the Marketing Department: one officer-level (me) and two director-level members who can authorize access of the information to others, and four specialist-level members who can utilize the information for online marketing campaigns and traditional marketing media.

¶ 15. The Marketing Plan is not available to the public, and has not been presented to the public or provided to the Metroparks' Board.

¶ 16. Access to the marketing program is strictly limited to four Metroparks employees — me, the Chief Executive Officer, the Marketing director, and the Golf Director.  We keep the Marketing Plan on our hard drives, not a shared drive available to other Metroparks employees.

¶ 17. Metroparks employees in both the Marketing and Golf Departments have been instructed to protect the Customer List and Marketing Plan from disclosure to third-parties.

¶ 18. The Metroparks has procedures in place to ensure that all of this information is protected both in third-party contracts and when public records requests are made.

¶ 19. The Metroparks employs a belt-and-suspend[er]s approach to dealing with its contractual partners, including vendors, when it comes to sharing specific information relating to the Marketing Plan. The Metroparks has not provided the Customer List or the Marketing Plan to any of its contractual partners. Specific details relating to its Marketing Plan have been provided in a limited manner to a select number of vendors who help Metroparks create content based upon the Plan, such as television commercials and radio ads. When this occurs, however, the Metroparks has protected the information from further disclosure.

{¶7} On February 3, 2014, this court converted the Metroparks' motion to dismiss into a motion for summary judgment as permitted by Civ.R. 12(B). On February 20, 2014, Salemi filed his brief in opposition to the Metroparks' motion for summary judgment.

{¶8} On March 19, 2014, this court ordered that the Metroparks file a supplemental brief, in support of its motion for summary judgment, based upon the need to further clarify the Metroparks' stance as to the basis for declining to provide any of the 14 categories of requested records. Attached to the Metroparks' supplemental brief was a second sworn affidavit of Sanaa Julien, ("affidavit II"). Affidavit II, provided in pertinent part that:

¶ 4. The definition of "Customer List" in my January 14, 2014 Affidavit includes Customer names, email addresses, and other information [the] Metroparks collects from "persons that have booked tee times on any electronic tee sheet software" (as I understand that phrase) and from "person, business, or corporations that have had outings or events at any of the golf courses owned or operated by the Cleveland Metro Parks [sic] for the years 2012 and 2013."

¶ 5. Metroparks does not provide customer information to any tee time reseller.

¶ 6. Metroparks does not keep in the ordinary course of business a specific list "of the persons employed by the Metro parks [sic] for the marketing of the golf courses."

¶ 7. Metroparks does not have any written employment contracts with "the persons employed by the Metro parks [sic] for the marketing of the golf courses."

¶ 8. Metroparks also does not keep a "list of those persons who have access to the email data base [Constant Contact], lists of outings and golf leagues."

¶ 9. Metroparks has "written directives" for its employees regarding access to the Constant Contact database and protection of the information contained in that database. These directives were issued by Metroparks' in-house legal counsel for the purpose of providing legal advice to Metroparks' employees regarding how to protect the Metroparks' trade secrets. I was a recipient of those directives.

¶ 10. These written directives have been kept confidential between Metroparks and its counsel.

{¶9} On April 17, 2014, the Metroparks filed its supplemental brief in support of its motion for summary judgment. On May 30, 2014, Salemi filed his supplemental brief in opposition to the Metroparks' motion for summary judgment.

## II. Mandamus: Standard of Review

{¶10} R.C. 149.43(C) provides that an original action, grounded in mandamus, is the remedy to enforce a request for public records. *State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948; *State ex rel. Physicians Commt. for Responsible Med. v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174; *State ex rel. Gannett Satellite Info. Network v. Shirley*,

78 Ohio St.3d 400, 678 N.E.2d 557 (1997). Thus, in order to obtain relief, Salemi must demonstrate that he possesses a clear, legal right to the requested records and that the Metroparks possesses a clear, legal duty to provide the requested records. Salemi need not establish that there exists no other adequate remedy in the ordinary course of the law, because mandamus is the specific remedy as provided within R.C. 149.43. *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.*, 78 Ohio St.3d 518, 678 N.E.2d 1388 (1997); *State ex rel. Simonsen v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 08AP-21, 2008-Ohio-6826.

{¶11} Although R.C. 149.43 is to be accorded liberal construction in favor of free access to public records, the relator must still establish entitlement to mandamus by clear and convincing evidence.

> Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' on criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See also State ex rel. Gooden v. Kagel*, 138 Ohio St.3d 343, 2014-Ohio-869, 6 N.E.3d 1170; *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877.

{¶12} It must also be noted that R.C. 149.43(A)(1)(v) establishes that certain records, which are prohibited from release by state or federal law, are not public records.

Such exceptions include, inter alia, intellectual property records, trade secrets, and records of communications between attorneys and their government clients pertaining to the attorney's legal advice. *State ex rel. Anderson v. Vermillion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975; *State ex rel. Besser v. Ohio State Univ*., 87 Ohio St.3d 535, 721 N.E.2d 1044 (2000).

{¶13} Finally, a request for public records is not specific because it names a broad category of records maintained by a governmental agency. In *State ex rel. Zidonis v. Columbus State Community College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 26- 27, the Supreme Court of Ohio held that:

> Moreover, the court of appeals correctly held that a "records request is not specific merely because it names a broad category of records listed within an agency's retention schedule." 2011-Ohio-6817, at ¶ 5. For example, the retention schedule for the administrative records of Ohio courts includes broad categories like "correspondence and general office records," "employee history and discipline records," "fiscal records," and "payroll records." Sup.R. 26.01(F), (J), (K), and (M). Requests for each of these record categories without any temporal or content-based limitation would likely be overbroad even though the categories are so named in the schedule. Manifestly, each request — and each retention category when the request is structured after such a category—must be analyzed under the totality of facts and circumstances.

> Therefore, the court of appeals properly denied Zidonis's request for a writ of mandamus to compel Columbus State to provide her with access to the requested complaint and litigation files because her request was overbroad.

*See also State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686; *State ex rel. Dehler v. Spanty*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831.

## III. Legal Analysis

**{¶14}** Based upon the aforesaid legal guidelines that must be applied to this original action in mandamus, which seeks the release of public records, we shall analyze each of the 14 categories of records requests as submitted by Salemi to the Metroparks. However, the 14 different categories shall be separated into five different groups, based upon common issues of law and fact.

A. Records requests concerning email lists and identities of persons, businesses, or corporations:

– *Email addresses for persons that have signed up for marketing programs that include special offers, discounts, and frequent golfer programs.* (Request 1)

– *Email addresses for any person that booked a tee time electronically.* (Request 2)

– *Names of any persons, businesses, or corporations that held outings or events , at the golf courses operated by the Metroparks, for the years 2012 and 2013.* (Request 3)

**{¶15}** The Metroparks argues that the email addresses of persons that have signed up for golf marketing programs, the email addresses of persons that have booked tee times electronically, and the names of any person, business, or corporation, that held a golf outing or event at the Metroparks' golf courses, all constitute a trade secret and thus are exempt from disclosure. Specifically, the Metroparks argues that the email addressees and identities fall within the realm of a client-customer list. We agree.

**{¶16}** R.C. 1333.61(D) defines a trade secret as "information, including the whole or any portion or phase of any * * * business information or plans, financial information,

or listing of names, addresses, or telephone numbers" that satisfies two prongs. First, the information must "derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Secondly, it must be "the subject of efforts that are reasonable under the circumstances to maintain it secrecy."

{¶17} The Supreme Court of Ohio, with regard to a claim of a trade secret, also adopted a six part analysis in *State ex rel. The Plain Dealer v. Ohio Dept. of Ins*., 80 Ohio St.3d 513, 687 N.E.2d 661 (1997), citing *Pyromatics, Inc. v. Petruziello,* 7 Ohio App.3d 131, 454 N.E.2d 588 (8th Dist.1983). The six part analysis requires a determination of: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in possessing the information as against competitors; (5) the amount of money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

{¶18} Customer lists fall within the realm of a trade secret. *Al Minor & Assoc. v. Martin*, 117 Ohio St.3d 58, 2008-Ohio-292, 881 N.E.2d 850; *Cary Corp. v. Linder*, 8th Dist. Cuyahoga No. 80589, 2002-Ohio-6483. A customer list that is entitled to trade secret status ordinarily includes not only the name of a business or person but also information that is not generally available to the public, such as the name of a contact

person, a telephone or cell phone number, an email address, and other data known only because of the relationship with the client. *Columbus Bookkeeping & Bus. Servs. v. Ohio State Bookkeeping, L.L.C.*, 10th Dist. Franklin No. 11AP-227, 2011 Ohio App. LEXIS 5655 (Dec. 20, 2011). The entity, claiming that the customer list is a trade secret, has spent a great deal of time and money in collecting the information contained within the customer list, and the disclosure of the customer list would grant any other entity or competitor a tremendous advantage in not having to expend time and money to obtain the same information as contained within the customer list. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio EPA*, 88 Ohio St.3d 166, 724 N.E.2d 411 (2000). *See also* R.C. 3734.12(G); Ohio Adm.Code 3745-49-031(D).

{¶19} Herein, we find that the customer lists, as developed and maintained by the Metroparks, constitute a trade secret. The sworn affidavits of Sanaa Julien clearly and convincingly establish that the client-customer lists derive independent economic value, actual or potential, from not being generally known by Salemi, and are not readily ascertainable by Salemi. *See* affidavit I, ¶ 6–9, 11–12; affidavit II, ¶ 3–5. We further find that the information contained within the customer lists is not generally known outside the operation of the Metroparks, the customer lists are accessed by only seven Metroparks's employees, the Metroparks has employed precautions to guard the secrecy of the customer lists, the customer lists impart value to the Metroparks in having the information as against competitors, the Metroparks has developed and maintained the customer lists through considerable expense and effort, and it would require Salemi to

expend a great deal of time and expense to independently acquire and duplicate the customer lists.

**{¶20}** Beyond a doubt, providing Salemi with the customer lists would result in a tremendous advantage to Salemi, because he would not have to spend the time and money to gather and accumulate the same information as currently held by the Metroparks through its customer lists.[1]   Accordingly, we find that the customer lists, which contain information relating to email addresses of persons that have signed up for golf marketing programs, the email addresses of persons that have booked tee times electronically, and the names of any person, business or corporation, that held a golf outing or event at the Metroparks's golf courses, all constitute a trade secret and thus are exempt from disclosure.

    B.    Records requests concerning the marketing of the Metroparks' golf courses

– *Copy of the marketing program for the Metroparks' golf courses.* (Request 4)

– *Copy of the business plan for the marketing of the Metroparks' golf courses.* (Request 6)

---

[1]It is abundantly clear that Salemi is a direct competitor to the Metroparks' golf course operation through his ownership and daily operation of Boulder Creek Golf Club.   *See* affidavit of Salemi, ¶ 1, as attached to supplemental brief in opposition to motion for summary judgment.   *See also* exhibits "D," "E," and "F" as attached to brief in opposition to motion for summary judgment.

{¶21} The Metroparks argues that the business plan and marketing program employed to promote the eight golf courses to potential and current golfers are exempt from disclosure pursuant to the trade secret exception.[2]   We agree.

{¶22} A marketing program or business plan may constitute a trade secret.  *P&G v. Stoneham*, 140 Ohio App.3d 260,747 N.E.2d 268 (1st Dist.2000); *IPI, Inc. v. Monahan*, 6th Dist. Lucas No. L-07-1101, 2008-Ohio-975; *Sovereign Chem. Co. v. Condre*, 9th Dist. Summit Nos. 18285 and 18465, 1998 Ohio App. LEXIS 1749 (Apr. 22, 1998).   Herein, the Metroparks has clearly and convincingly established that it has developed a confidential and specialized computer program for marketing its golf courses, developed a specialized marketing program and business plan  for marketing its golf courses, has developed and continuously upgraded confidential software to implement its marketing and business plan, and has kept confidential the marketing and business plan.  *See* affidavit I, ¶ 7–11, 15–18; affidavit II, ¶ 3, 9–10.

{¶23} The Metroparks derives economic value from its marketing program and business plan because the information is unknown to Salemi, who can and would obtain economic value from its disclosure.   In addition, the marketing program and business plan are the subject of efforts that are reasonable, under the circumstances, to maintain

---

[2]The Metroparks argues that "[i]n his public records requests, Mr. Salemi explicitly requested a copy of the 'marketing program for the golf courses' (item 4) and the 'business plan to market the golf courses' (item 6).   Because these requests are seeking the same information, Metroparks referred to both of them as the 'Marketing Plan' in its [motion for summary judgment] and addressed why the Marketing Plan is a trade secret exempt from the Act. ([M]otion for summary judgment at 10-12.)"

their secrecy. R.C. 1333.61(D); *State ex rel. The Plain Dealer,* 80 Ohio St.3d 513, 687 N.E.2d 661; *Water Mgt., Inc. v. Stayanchi*, 15 Ohio St.3d 86, 472 N.E.2d 715 (1984). Thus, the Metroparks' marketing program and business plan are exempt from disclosure to Salemi.

    C.    Records requests concerning money expended by the Metroparks for marketing of the golf courses, contracts with private companies, minutes, meeting, emails and letters relating to marketing of golf courses.

*- Copies of all checks spent to market the golf courses.* (Request 5)

*- Copies of any contracts with private companies that relate to the marketing of the golf course.* (Request 7)

*- Copies of any agreements with the Golf Channel or any other tee time reseller.* (Request 13)

*- Copies of any minutes of meetings, notes, emails, or letters that relate to the marketing of the golf courses.* (Request 14)

**{¶24}** The Metroparks argues that checks, contracts, agreements, minutes of meetings, emails and letters, that relate to the marketing of the golf courses, are exempt from disclosure. Specifically, the Metroparks argues that the requested records are exempt because "Salemi [has] attempted an end-run around the trade secret exemption to the Act by requesting documents that would allow him to piece together the Marketing Plan without receiving the complete Marketing Plan directly. * * * Salemi could once again use this information to reverse-engineer the Marketing Plan." We disagree.

**{¶25}** The Metroparks has failed to establish that checks, contracts, agreements, minutes of meetings, emails, and letters that relate to the marketing of the golf courses are

exempt from disclosure. In fact, even if the checks, contracts, agreements, minutes, meetings, emails, and letters contain information that constitutes a trade secret, such information is subject to redaction. *State ex rel. Luken*, 135 Ohio St.3d 416, 2013-Ohio-1532, 988 N.E.2d 546; *State ex rel. Besser,* 87 Ohio St.3d 535, 721 N.E.2d 1044.

{¶26} Nevertheless, R.C. 149.43(B)(2) and Ohio case law require that a public records request be limited to those requests that are not ambiguous, overly broad, or all encompassing. *State ex rel. Zidonis,* 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861; *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 640 N.E.2d 174 (1994); *State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 577 N.E.2d 444 (10th Dist.1989). Examples of overly broad records requests include a request for all email messages, text messages, correspondence, letters, minutes, and traffic reports. *State ex rel. Glasgow*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686. Herein, Salemi's request for checks, contracts, agreements, minutes of meetings, emails, and letters that relate to the marketing of the golf courses is overly broad and unreasonable in its scope because the request is not limited to a specific time period.

{¶27} However, R.C. 149.43(B)(2) mandates that the office or person responsible for public records, if faced with an overly broad request, shall provide the requester with an opportunity to revise the request. *State ex rel. Zidonis*; *State ex rel. ESPN, Inc. v. Ohio State Univ*., 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939. The Metroparks possessed a clear legal duty to inform and provide Salemi with an opportunity

to revise his request in order to refine his request for records and limit the request to a specific period of time that was not overly broad. Thus, we hold that the Metroparks is to provide Salemi with an opportunity to revise his request for checks, contracts, agreements, minutes of meetings, emails, and letters that relate to the marketing of the golf courses. The production of the requested records is subject to redaction. *State ex rel. Anderson*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975; *State ex rel. The Plain Dealer*, 80 Ohio St.3d 513, 687 N.E.2d 661.

{¶28} D. Records concerning lists of employees or third-party businesses

*- List of employees employed by Metroparks for purpose of marketing golf courses.* (Request 8)

*- Copies of job descriptions and written contracts of employees employed by Metroparks for purpose of marketing golf courses.* (Request 9)

*- List of persons that have access to Client Lists, golf outings and golf leagues.* (Request 10)

*- List of any third-party businesses that shares customer lists with Metroparks.* (Request 12)

{¶29} The Metroparks argues that documents related to Metroparks employees or third-party businesses have either been provided to Salemi or do not exist. Specifically, the Metroparks argues that Salemi's request for records is either moot or that it possesses no duty to create records. We agree.

{¶30} The Supreme Court of Ohio has established that there exists no duty to create a public record. *Norris v. Budgake*, 89 Ohio St.3d 208, 729 N.E.2d 758 (2000); *State ex rel. Taxpayers Coalition v. Lakewood*, 86 Ohio St.3d 385, 715 N.E.2d 179 (1999); *State ex*

*rel. White v. Goldsberry*, 85 Ohio St.3d 153, 707 N.E.2d 496 (1999). The uncontroverted affidavits, attached to the motion for summary judgment and the supplement to the motion for summary judgment, establish that the records that Salemi seeks, through requests 8, 10, and 12, do not exist. *See* affidavit II, ¶ 7-9. It must also be noted that Salemi has not produced any evidence that there exists any records with regard to requests 8, 10, and 12. Because Salemi has failed to prove by clear and conniving evidence that the requested lists even exist, he cannot say that the Metroparks possesses a duty to produce them. *State ex rel. McCaffrey,* 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877; *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235.

**{¶31}** In addition, the MetroParks has already provided Salemi with the written job descriptions for the Chief Marketing Officer, the Director of Marketing and Strategy, the Marketing Representative, the Director of Communications, and the Marketing Specialist/Promotional Strategies and Digital Marketing. *See* exhibit "C" as attached to supplement to motion for summary judgment. Thus, mandamus does not lie with regard to requests 8-10, and 12.

**{¶32}** E. Records request concerning any written directives

*- Written directives that deal with access to the Client Lists and protection of the information contained within the Client Lists.* (Request 11)

**{¶33}** The Metroparks argues that the written directives employed concerning access to the customer lists and protection of any information contained within the customer lists are exempt from disclosure because of the attorney-client privilege exception. We agree.

{¶34} R.C. 149.43(A)(1)(v) excludes from the definition of public record any record that is prohibited from release by state or federal law. The attorney-client privilege, which covers records of communications between attorneys and their government clients that pertain to the attorney's legal advice, is a state law that prohibits release of those records. *State ex rel. Besser,* 87 Ohio St.3d 535, 721 N.E.2d 1044.; *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 700 N.E.2d 12 (1998); *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 81 Ohio St.3d 58, 689 N.E.2d 32 (1998). The attorney-client privilege arises: (1) where legal advice of any kind is sought from a professional legal adviser in his capacity, (2) the communications relating to the requested legal advice is made in confidence by the client and intended to be permanently protected from disclosure by himself or by the legal adviser, and (3) the privilege has not been waived. *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21; *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir.1998).

{¶35} Herein, the affidavits attached to the motion for summary judgment and the supplement to the motion for summary judgment establish that all written directives, concerning access to the customer lists and protection of the information contained within the customer lists, were developed and issued by the Metroparks' in-house counsel for the purpose of providing legal advice to the Metroparks. *See* affidavit II, ¶ 9. In addition, the legal advice provided to the Metroparks has been kept confidential and the attorney-client privilege was not waived. Affidavit II, ¶ 10. The directives employed by

the Metroparks fall within the realm of protected attorney-client privileged matters and are exempt from disclosure under R.C. 149.43. *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467; *State ex rel. Leslie*. Thus, mandamus does not lie with regard to request 11.

**{¶36}** Finally, Salemi has requested attorney fees and statutory damages. An award of attorney fees is not available to Salemi under R.C. 149.43, absent evidence that he paid, or was obligated to pay an attorney to prosecute this original action in mandamus. Because Salemi prosecuted this original action pro se, he is not entitled to attorney fees. *State ex rel. O'Shea & Assoc. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297; *State ex rel. Hous. Advocates, Inc. v. Cleveland*, 8th Dist. Cuyahoga No. 96243, 2012-Ohio-1187. Salemi is not entitled to an award of statutory damages because he did not transmit any of his records requests "by hand delivery or certified mail," as required by R.C. 149.43(C)(1). *State ex rel. Miller v. Brady*, 123 Ohio St.3d 255, 2009-Ohio-4942, 915 N.E.2d 1183; *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 119 Ohio St.3d 1484, 2008-Ohio-5273, 894 N.E.2d 1242. Email, as employed by Salemi to request records, does not constitute a records request by written request or certified mail. *State ex rel. Mahajan v. State Med. Bd. of Ohio*, 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280; *State ex rel. DiFranco v. S. Euclid*, 8th Dist. Cuyahoga No. 97823, 2012-Ohio-5158, *aff'd on other grounds*.

**{¶37}** Accordingly, we grant in part and deny in part the Metroparks' motion for summary judgment. Salemi is not entitled to any records as made through requests 1-4,

6, and 11. Records requests 8-10, and 12 are moot because the records have already been provided to Salemi or do not exist. Salemi is entitled to records as made through records requests 5, 7, 13, and 14 after the Metroparks has provided Salemi with an opportunity to modify his requests so that they do not constitute an overly broad request for records. The records requests must be limited to a specific period of time.

{¶38} Costs to be shared by the parties. The court directs the clerk of courts to serve all parties with notice of this judgment and the date of entry upon the journal as required by Civ.R. 58(B).

{¶39} Writ granted in part and denied in part.

_____
TIM McCORMACK, JUDGE

MARY J. BOYLE, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR